**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| CHRISTINE PALACIOS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC., and DOE INSURANCE COMPANIES I THROUGH V,<br><br>Defendants. | CIVIL CASE NO. 15-00002<br><br>**ORDER RE DEFENDANT UNITED AIRLINES' MOTION FOR SUMMARY JUDGMENT** |

Before the court is Defendant United Airlines, Inc.'s motion for summary judgment. *See* ECF Nos. 79 and 80. For the reasons stated herein, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This case arises from an incident on a United Airlines flight that led to Plaintiff Christine Palacios leaving the plane, and which she now claims caused her bodily injury for which she is entitled to compensation.

On December 17, 2014, Christine Palacios and her physician and boyfriend, Dr. Cabot, boarded United Flight No. MH 0802, traveling from Manila, Philippines, to Guam. Second Am. Compl. ¶ 7, ECF No. 77; Def's. Stmt. of Facts, ECF No. 81; Pl's. Stmt. of Facts, ECF No. 89. The

flight was the return leg of a roundtrip ticket from Guam to Manila and back. Def's. Stmt. of Facts; Pl's. Stmt. of Facts. At that time, Plaintiff was suffering from cancer, borderline respiratory failure, severe fatigue, and wasting. Second Am. Compl. ¶ 8. To address her conditions, she had packed a BiPAP machine, heart rate measurement machine, and an emergency bag with medical supplies. Palacios Depo. 39:5-20, ECF No. 88 at 36. The bags in which she carried the machines were not marked as containing essential medical supplies. *Id.*

Once aboard, while the plane was taxiing away from the gate, Dr. Cabot was instructed by a flight attendant to move his seat into a fully upright position, as required by Federal Aviation Regulations, and he refused to do so. Def's. Stmt. of Facts; Pl's. Stmt. of Facts; Bigler Decl. ¶¶ 5-7, ECF No. 81-1. He then attempted to sit in an Economy Plus seat without paying, and refused to pay for the upgrade when a flight attendant requested that he purchase the upgrade. Def's. Stmt. of Facts; Pl's. Stmt. of Facts. The flight attendants contacted the pilot, Captain Bigler, and informed him of the situation. *Id.*

Captain Bigler then taxied the plane back to the gate to determine whether Dr. Cabot was a safety risk, announcing there was "an unruly passenger" on board. Cabot Depo. 22:7, ECF No. 88 at 52; *see* Bigler Decl., ECF No. 81-1 (discussing "a passenger" arguing with the flight attendants).[1] After the plane stopped at the gate, Dr. Cabot walked to the front of the plane and Plaintiff followed him. Cabot Depo. 23:6-7, ECF No. 88 at 53; Palacios Depo. 86:1-2, ECF No. 81 at 13. Captain Bigler spoke with Dr. Cabot, who "was argumentative." Def's. Stmt. of Facts; Pl's. Stmt. of Facts; Bigler

---

[1] Plaintiff contends this is a disputed fact, arguing that the Captain had already "made up his mind." Pl's. Stmt. of Facts. To support this, Plaintiff relies on Dr. Cabot's testimony, submitted as Exhibit E. (Ex. E, ECF No. 88 at 47-64.) Nowhere does Dr. Cabot indicate that he believed Captain Bigler had "already made up his mind" about whether Dr. Cabot was a safety risk, and therefore the court finds that Plaintiff has not submitted evidence on this point to create a genuine dispute of material fact.

Decl. ¶ 14. Based on Dr. Cabot's "argumentative behavior, and his refusal to comply with the crew members' instructions," Captain Bigler decided that he "posed a risk to the safety of the flight and that he should not be transported on the flight." *Id.*

During this time, is it undisputed that Plaintiff was not asked expressly to leave her seat or to deplane. However, Plaintiff followed Dr. Cabot to the front of the plane with her medical certificate. Palacios Depo. 86:3-4, ECF No. 81 at 13. She saw that her luggage, both carry-on and checked bags, were being removed from the plane, even though she had not been informed that she was being removed. *Id.* at 90:14-21, ECF No. 88 at 43. She asked, "What's going on?" but received no response from the captain, and the flight attendants were "apologizing to me." *Id.* at 90:14-17, 91:6.

Eventually, Plaintiff and Dr. Cabot disembarked, and as they were walking out, she saw a wheelchair, which Plaintiff believed was for her. *Id.* at 96:13-16 and 20-22, ECF No. 88 at 45. Before the incident, Plaintiff felt ill, and afterward, she "lost sleep" and was "physically tired." *Id.* at 149:8-11, ECF No. 81 at 26. Further, after the incident, she was delayed in receiving antibiotics, although she suffered no health repercussions. *Id.* at 155:21-23, 156:3-5, ECF No. 81 at 28-29. However, after she returned to Guam the following day, her "normal routine" regarding medical needs was altered, although she was able to return to the normal routine "not that far off" from her return to Guam. *Id.* at 157:1-13, ECF No. 81 at 30. The temporary change to her medical routine involved the addition of oxygen and new medications. Cabot Depo. 10:7-16, ECF No. 88 at 97.

Following this incident, Plaintiff filed a lawsuit, alleging that she is owed damages for the injuries she suffered due to United Airlines' actions. At this stage, Plaintiff's second amended complaint is before the court, and Defendant has filed a motion for summary judgment. The Court has already ruled that certain exhibits attached to Plaintiffs' brief in opposition to the motion and to Plaintiffs' statement of facts are inadmissible and will not be considered. *See* Order, ECF No. 95.

## II.  LEGAL STANDARD

On a motion for summary judgment brought by a defendant against a plaintiff's claims, there is a "shifting burden of proof." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). As set forth by the Ninth Circuit in *In re Oracle*, 627 F.3d at 387:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id*. at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

## III.  DISCUSSION

Defendant seeks summary judgment on all claims.  Plaintiff concedes that she cannot assert a claim under the Warsaw and Tokyo Conventions, and also that she cannot claim punitive damages under the Montreal Convention. Pl's. Resp. Br. 1, ECF No. 88. Accordingly, Defendant's motion as to these issues is granted. The sole remaining issue for the court to decide is whether Defendant is entitled to summary judgment on the claim under the Montreal Convention.

Under the Montreal Convention, an airline may be liable to a passenger if the passenger can demonstrate "damage sustained in case of death or bodily injury . . . upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of

4

the operations of embarking or disembarking." Art. 17(1) of the Convention for Unification of Certain Rules for International Carriage by Air (May 28, 1999). An accident is "an unexpected or unusual event or happening that is external to the passenger." *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002) (quoting *Air France v. Saks*, 470 U.S. 392, 405 (1985)).[2] To determine whether an accident has occurred, the trier of fact must apply the definition "flexibly" after assessing "all the circumstances surrounding a passenger's injuries." *Id*. However, the inquiry "is an objective one, and does not focus on the perspective of the person experiencing the injury." *Husain v. Olympic Airways*, 116 F. Supp. 2d 1121, 1130 (N.D. Cal. 2000) (internal citation omitted). Moreover, the resulting bodily injury must be the "product" of the accident or a "chain of causes," at least one link of which was "an unusual or unexpected event external to the passenger." *Id*. at 838.

In this case, the alleged accident is the removal of Plaintiff from the plane. Defendant states that there was nothing unusual or unexpected that happened external to Plaintiff because she voluntarily followed Dr. Cabot off the plane. Mem. in Supp. 23-28. Plaintiff responds that she was never expressly told, in response to her question of what was going on, whether she was being removed, but that she believed she was being removed based on the flight attendants' apologies, seeing her bags removed, and a wheelchair in the hall. *See generally* Pl's. Resp. Br.

The admissible evidence submitted by both parties shows that there remains a genuine dispute of material fact with regard to whether Plaintiff was forcibly removed from the flight, and therefore whether an accident occurred within the meaning of Article 17. There is no dispute as to whether the removal of Dr. Cabot was proper. However, even though his removal may have been justified, a

---

[2] Although the Supreme Court was interpreting the Warsaw Convention in *Saks*, because the Montreal Convention incorporated many of the substantive provisions of the Warsaw Convention, including Article 17, "courts have routinely relied upon Warsaw Convention precedent where the equivalent provision in the Montreal Convention is substantively the same." *Narayanan v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014).

5

reasonable trier of fact could conclude that Defendant had decided to also remove Plaintiff from the removal of Plaintiff's bags, which had her name on them and not Dr. Cabot's (*see* Cabot Depo. 41:21-23, ECF No. 88 at 60), and the repeated apologies from the flight attendants. A jury could reasonably find these events unusual and unexpected, and certainly external to Plaintiff, particularly because Defendant has not explained why all of her luggage was removed from the plane. *See* Santos Depo. 31-32, ECF No. 88 at 71-72 (stating she brought Plaintiff only her hand-carry luggage).

That Plaintiff did not have to be arrested or escorted off the plane by security does not resolve the question of whether she left voluntarily, and the authority provided by Defendant does not show otherwise. Moreover, even if Plaintiff willingly went to the front of the cabin with Dr. Cabot, she may not have voluntarily disembarked. The court acknowledges that Plaintiff has testified that she does not travel without Dr. Cabot, but this cannot resolve the issue as to whether United did, in fact, decide to remove her and therefore whether there was an accident.

The Court also finds that Plaintiff has sufficiently stated bodily injury in the form of fatigue following the incident and the need for additional oxygen and new medications. Whether a jury will ultimately conclude that the alleged aggravation of her preexisting conditions was caused by an accident is uncertain. However, the Court cannot conclude as a matter of law that no reasonable trier of fact would determine that Plaintiff suffered no physical injury within the meaning of Article 17. Accordingly, Defendant's motion for summary judgment on the Montreal Convention claim is denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (ECF No. 79) is **GRANTED IN PART** as to all claims under the Warsaw and Tokyo Conventions and as to the request for punitive damages. The motion is **DENIED IN PART** as to the Montreal Convention claim.

**SO ORDERED.**

/s/ Frances M. Tydingco-Gatewood
   Chief Judge
**Dated: Sep 13, 2018**